## Jenkins *v.* McMichael, Appellant.

*Statute of limitations—Adverse possession—Vendor and vendee.*

Where a vendee of land goes into possession under articles of agreement, neither he nor any one claiming under him can acquire title by adverse possession as against the vendor, unless he surrenders the possession which he had under the articles of agreement, and starts a new possession adverse and hostile in character.

Where in ejectment land is claimed by adverse possession, and the evidence shows that the possession was actual, visible, notorious and continued for the full period of twenty-one years, but that the possession was acquired under articles of agreement, the possession is neither hostile nor adverse, and it is the duty of the court to instruct the jury that, as the possession lacked these essential requisites, the plaintiff is not entitled to recover.

Where a vendee of land pays a portion of the purchase money and goes in possession under articles of agreement, there is no duty imposed upon the vendor to compel the vendee to pay the balance of the purchase money, or failing that, to oust him of possession and return the portion of the purchase money paid.

Argued April 17, 1901. Appeal, No. 100, April T., 1901, by defendant, from judgment of C. P. Washington Co., Nov. T., 1899, No. 108, on verdict for plaintiffs, in case of John Jenkins et ux. *v.* Josiah K. McMichael. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Ejectment for an undivided one-half interest in land in the borough of West Washington. Before TAYLOR, J.

At the trial it appeared that in 1842, George W. Boyd sold

the land in dispute to one Bowman for $600. Bowman paid on account $100, and went into possession of the property under the articles of agreement. Shortly thereafter he sold his interest in the lands to P. F. Marshman. Marshman went into possession but never paid the balance of the purchase money, or obtained a deed of the land from Boyd. Marshman died intestate, leaving a brother as one of his heirs who conveyed a half interest in the land to the plaintiff. Plaintiff claimed title by adverse possession. Boyd's heirs conveyed the land to the defendant, who obtained possession on March 21, 1899. Plaintiff offered various matters in evidence tending to show the adverse possession of Marshman, all of which were admitted. [1, 2.]

The court charged in part as follows:

[So, if you should find, under the evidence here, that Dr Marshman not only had possession of this property in 1855 under the arrangement between Boyd and Bowman, but that he had paid part of the purchase money, then there was due him, on the payment of the balance of the purchase money to Boyd, a deed for this property; and if he did not get the deed, then it was incumbent upon Boyd to take some steps to oust him of possession and pay back to him the purchase money, if any had been paid.] [3]

[Now it is conceded, as we said a while ago, down until the death of George Boyd, that he never, so far as there is any evidence in this case, asserted any ownership or title—never undertook to dispossess the Marshmans or any of them from living in this property; and the plaintiffs claim that that is a circumstance in this case, along with another item of evidence that cropped out, why he left, that George Boyd didn't claim any interest in this property, and while, between the time of his death —if the statute of limitations had not run against him in favor of the plaintiff before his death and before his wife's death— the wife would have had the right of possession of it during her lifetime, but the reason she never joined in this deed was because he left with another woman; yet if the statute of limitations, of twenty-one years, elapsed since 1855 under the requirements of the law, then Mrs. Boyd would not have had any interest in it, because her title depended altogether on whether George Boyd, her husband, had any title, and if the statute of

limitations had cut him out, it would also cut her out, and there is where they claim the matter ends, that Boyd never having asserted any ownership, living until 1883, and once having the legal title in him, and having sold to Bowman and he to Marshman, the plaintiffs claim they have shown in this case to the satisfaction of a jury that Boyd had no interest in there,—he either had conveyed it all away and got the purchase money for it or he had gotten enough to satisfy him that that was all he could get when his wife would not join in the deed, and he just simply abandoned it and left.] [2]

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions. (3, 4) Portions of charge as above, quoting them.

*T. F. Birch*, with him *Norman E. Clark*, for appellant.—The possession of land taken under an executory contract for the purchase thereof is in no sense adverse to the person with whom the contract is made : Proprietors of Twp. No. 6 v. McFarland, 12 Mass. 325; DeHaven v. Landell, 31 Pa. 120; Harris v. Richey, 56 Pa. 395; Piper v. Sloneker et al., 2 Grant, 113; Trickett on Limitations, pp. 46–50; Dikeman v. Parrish, 6 Pa. 210.

An attempt to purchase a better title does not affect an inchoate right previously acquired under the statute of limitations. It does not render the possession less hostile to the true title : Bannon v. Brandon, 34 Pa. 263; McMasters v. Bell, 2 P. & W. 180; Trickett on Limitations, section 38; Cadwalader v. App et al., 81 Pa. 194; Bell et al. v. Clark, 111 Pa. 92.

*J. Carter Judson*, of *Judson & Judson*, for appellee.—The long silence of the Boyds raises the presumption of a grant : Burke v. Hammond, 76 Pa. 172; Taylor v. Dougherty, 1 W. & S. 325; Hastings v. Wagner, 7 W. & S. 216; Fox v. Thompson, 31 Pa. 174; Kingston v. Lesley, 10 S. & R. 383; Warner v. Henby, 48 Pa. 187.

OPINION BY BEAVER, J., July 25, 1901:

This was an ejectment. The premises in dispute were sold

by Boyd to Bowman, under articles of agreement. Bowman sold to Marshman. The plaintiff claims the undivided half of the premises by deed from one of Marshman's heirs. The defendant claims by deed from the heirs of Boyd. Plaintiff's claim is based upon the adverse possession of Marshman under which, it is alleged, he acquired a complete title in his lifetime. The fundamental error which runs through the entire case from its inception to its close is the assumption that Marshman's possession was hostile to Boyd or could ever become adverse as to him and those claiming under him, without a surrender of the possession which he acquired under the original articles of agreement. The agreements between Boyd and Bowman and between Bowman and Marshman were not produced. When the purchase money was to be paid, how it was to be paid, to whom it was to be paid were not shown in any way. It is apparent from the testimony that the purchase money never was paid in full.

The claim of the plaintiff is based entirely upon the alleged adverse possession of Dr. Marshman which he says began in 1855 and continued uninterruptedly at least until 1883, at which time he alleges he acquired a complete title. " The principle is well settled that to make a disseisen that will be the commencement of a new title, producing a change by which the estate is taken from the rightful owner and placed in the wrongdoer, the possession taken by the disseisor must be hostile or adverse in its character, importing a denial of the owner's title of the property claimed ; otherwise however open, notorious, constant and long continued it may be, the owner's action will not be barred. The mere fact that the claimant has had possession of the land for the statutory period will not suffice to satisfy the rule requiring the disseisor's possession to be hostile." 1 Cyclopedia of Law and Procedure 1026. " Where a party relies on the statute of limitations as giving him a positive title, one with which he can successfully assail even the holder of the legal title in possession, he ought to be held to show all the elements constituting it, conjoined and united in his hands, and that he, or those under whom he claims, entered into the possession of the premises, claiming the same as and for his own property and that as such he has held actual, adverse, continued, visible, notorious, dis-

tinct and hostile possession thereof for the full period of twenty-one years: Hawk v. Senseman, 6 S. & R. 21; Adams v. Robinson, 6 Pa, 271; Hole v. Rittenhouse, 25 Pa. 491. A court should in case of such a title see that there is evidence to go to the jury on all these points. If it be wanting as to any of them, then an essential of title is wanting and the duty of the judge is plain. He should instruct the jury that there is not sufficient evidence to entitle the plaintiff to recover." De Haven v. Landell, 31 Pa. 120. How any one claiming under Dr. Marshman could set up title by adverse possession against those claiming under Boyd, the common source of title, we are at a loss to understand. Marshman's title never was hostile to Boyd. He went into possession under Bowman who claimed under an article of agreement from Boyd and, therefore, entered in subserviency to Boyd's title. " It is abundantly established that where the entry has not been adverse, where he who sets up the statute of limitations came in expressly or legally in subservience to the title of the owner, he cannot be permitted to treat his subsequent continued possession as adverse. Before the statute commenced to run in favor of such an occupant, the privity between him and the owner must have been disowned, severed by some unequivocal act:" Bannon et al. v. Brandon, 34 Pa. 263; Cadwalader v. App, 81 Pa. 194. It is plain, therefore, that Marshman's possession lacked two of the essential elements necessary to acquire title under the statute of limitations by adverse possession. It was not hostile and not adverse. It was the duty of the court, therefore, to have instructed the jury that, lacking these essential requisites, the plaintiff was not entitled to recover under a claim of adverse possession.

In this view of the case the offers to introduce in evidence the mechanic's lien entered in 1877, upon which the property was sold to Ashbrook and by Ashbrook to Dr. Marshman, together with the deeds from the sheriff to Ashbrook and from Ashbrook to Marshman, should have been rejected, because entirely irrelevant.

Specific exception is taken to the language of the court contained in the third assignment of error: " So, if you should find under the evidence here that Dr. Marshman not only had possession of this property in 1855, under the arrangement be-

tween Boyd and Bowman, but that he had paid part of the purchase money, then there was due him on the payment of the balance of the purchase money by Boyd a deed for this property; and, if he did not get the deed, then it was incumbent upon Boyd to take some steps to oust him of possession and pay back to him the purchase money, if any had been paid." No such duty devolved upon Boyd or those claiming under him. As already remarked, there was no evidence to show when the purchase money was payable or how or to whom payable, nor was it shown or attempted to be shown that the balance of purchase money had ever been tendered. It was no more incumbent upon Boyd to bring an action of assumpsit for the recovery of the purchase money or an equitable ejectment to recover posssession of the property, by reason of its nonpayment than it was upon Marshman to attempt to enforce specific performance of the contract.

The court instructed the jury properly as to what constituted adverse possession but it was error to allow them to find that the elements which enter into and constitute adverse possession were present in this case. " What constitutes adverse possession is a question of law for the court but the facts supporting the claim must be established to the satisfaction of the jury like any other question of fact. The reason for this rule is the fact that title being shown the law presumes the true owner to be in possession until adverse possession is proved to begin: " 3 Kerr on Real Property, 2295.

The appellee in his printed argument here seems to shift his ground and claim that Marshman, under whom the plaintiff claimed, had acquired a title by a presumptive grant. Such a title is " founded on the presumption that the uninterrupted possession for a long period of years is established on a just right, without which the person would not have been suffered to continue in the enjoyment of the land." " In this country titles by prescription rest upon the presumption of the previous grant or agreement which has been lost by lapse of time: " 3 Kerr on Real Property, 2290. But in his abstract of title and also in the trial below the only ground upon which the right to a recovery was based was that of adverse possession. This was the claim which the defendants were called upon to meet; upon this theory the case was tried and submitted to the

jury by the court below and, inasmuch as the essentials of title
by adverse possession were lacking, the court should have so
instructed the jury.

Judgment reversed and a new venire awarded.