(No. 6475.   May 4, 1938.)

## NORTHWESTERN AND PACIFIC HYPOTHEEKBANK (NORTHWESTERN AND PACIFIC MORTGAGE COMPANY) a Corporation, Respondent, v. GEORGE HOBSON, Appellant.

[80 Pac. (2d) 793.]

James R. Bothwell and Harry Povey, for Appellant.

A. J. Myers, for Respondent.

BUDGE, J.—Respondent sought by this action to establish a right of way for a road, across appellant's land, and to a bridge, partly on appellant's land, and to restrain and enjoin appellant from interfering with respondent's use thereof.

The court in effect found that respondent and its predecessor in interest were in open, notorious, continuous, adverse, and uninterrupted use of the said right of way from 1928 to 1936, a length of time exceeding the 5 year period prescribed by secs. 5–203 and 5–205, I. C. A.; that the right of way became an appurtenance to the land of respondent; that a prescriptive right in such right of way was established; and that appellant had used said bridge as a means of traveling from one portion of his land to another under a claim of right, jointly with respondent, for more than five years, and concluded the right of way, the road and the bridge, were appurtenances to respondent's land; that a prescriptive right had been established thereto; that appellant should be enjoined from interfering with respondent's use as a means of ingress and egress to and from its land; and that appellant should have the right to use said right of way and bridge jointly with respondent. Judgment was entered in accordance with said findings and conclusions, from which judgment this appeal was taken.

Appellant's four assignments of error may be divided into two main propositions: First, that the evidence is insufficient to support the findings, and the judgment based thereon, to the effect that respondent and his predecessor were in open, notorious, continuous, adverse and uninterrupted use of the right of way and bridge from 1928 to 1936, for the reasons (1) that the use from 1928 to 1931 was without the knowledge of appellant, (2) that after 1931 it was with the permission of appellant and not adverse, and (3) that subsequent to 1931 respondent recognized appellant's ownership by an attempt to purchase the right of way, and Second, that the

court erred in failing to find that appellant is the owner of the bridge.

Respondent secured its title to the lands, to which the court found the right of way appurtenant, through foreclosure of a mortgage to respondent, placed on the land by Blaylock in 1920 or 1922, which mortgage continued in existence until foreclosed in 1934. Respondent purchased at the foreclosure sale and acquired possession of the land in 1934. Certificate of sale issued March 9, 1934, and sheriff's deed issued April 6, 1935.

The record discloses that in 1928 Will Hobson was in possession of appellant's land under a contract to purchase the same, the nature of which contract is not disclosed. Prior to the inception of the right claimed by respondent, Blaylock, respondent's predecessor, entered into an oral agreement with Will Hobson in substance that Blaylock would pay Will Hobson a price to be made "right" for a right of way across the appellant's land and if necessary Blaylock was to satisfy claims which might arise because of a community well lying in the center of the road, and Will Hobson would give a deed for the easement. Thereafter and in 1928 Blaylock built a bridge at a cost to him of $512 across the canal of the Twin Falls Canal Company, the bridge being substantially constructed with concrete abutments at the ends and concrete support in the middle. At the same time Blaylock fenced the right of way with material furnished from appellant's land. Blaylock built some grade and a portion of the road was graded by one Howard, and use of the road and bridge as a means of ingress and egress to respondent's land commenced in 1928. The use of the road and bridge continued until 1936 at which time appellant made protest, strung wires across the roadway, and posted notices thereon. User for the period 1928 to 1936 clearly appears, however the circumstances under which said use continued is questioned.

As heretofore stated, appellant's first proposition is that user for the period 1928 to 1931 was without the knowledge of appellant. The record discloses that appellant lived in the vicinity during all of such period and that the use of the road and bridge was continuous, open and notorious, and of such a character as to give notice for all to see. There is

evidence likewise of actual knowledge on the part of appellant. Blaylock in effect testified that appellant "objected when he started." Appellant testified with reference to his own use of the road and bridge as follows:

"Q. Since the construction of this bridge (1928) you or your tenants have used that method of crossing the Low Line Canal to reach your property south of the canal?

"A. Since its been built I have."

In so far as the record discloses appellant's testimony purported to his own knowledge and during such testimony the witness stated that the fence, built in 1928, was built from material taken off his place, wire he had not used. Again it appears that appellant when questioned as to the work that was done on the road testified that Mr. Howard had graded it up in order to keep the water from running through his corral, and from Blaylock's testimony it appears that such grading was done in 1928. Lack of knowledge on the part of appellant of the building of the bridge, fencing and grading of the road, and use thereof by respondent's predecessor is inconsistent with the testimony above referred to. It further appears that appellant in effect recognized that someone had a right of way across his land, other than himself, inasmuch as he relies in part upon his exhibit "1," a purported bill of sale to himself of a *right of way*, executed by Blaylock and wife March 9, 1934, which instrument recites that Blaylock and wife:

"Grant, Bargain, and Sell and Convey unto said party of the second part (appellant), his executors, administrators and assigns *a road right of way* along the East line of the Geo Hobson ranch laying SE of Buhl *this being all my right title and equity in the said right of way and the bridge."* (Emphasis inserted.)

It appears there was evidence of actual knowledge on appellant's part of the claimed right as early as 1928, as well as circumstances strongly indicating constructive notice (*Trask v. Success Min. Co.,* 28 Ida. 483, 155 Pac. 288; 1 Am. Jur., sec. 140, p. 874; *Downie v. City of Renton,* 162 Wash. 181, 298 Pac. 454; *Grimmesey v. Kirtlan,* 93 Cal. App. 658, 270 Pac. 243; *Pacific Gas & Elec. Co. v. Crockett Land & Cattle Co.,* 70 Cal. App. 283, 233 Pac. 270; *Silva v. Hawn,* 10

Cal. App. 544, 102 Pac. 952), as well as evidence of an admission at a later date of a right of way across his lands.

It is next urged that after the spring of 1931 the use by respondent was with appellant's permission and not adverse. The record discloses that Will Hobson moved off the appellant's land in the spring of 1931 and that appellant then took actual possession. With reference to the period following the spring of 1931, the record is absolutely silent as to any permission or right to the use of the right of way having been given by appellant, or sought or requested by respondent, prior to 1934. The evidence is sharply in conflict with reference to the circumstances under which the road and bridge use was continued after 1934. Peavey, an agent of respondent, testified that he was *first* notified to stop using the road and bridge in the spring of 1936, at which time appellant strung wires across the road and posted notices. On the other hand, appellant testified that he notified Mr. Peavey to stop using the road and bridge in 1934 or 1935, and that the use of the road and bridge during 1935 was, with his permission, given to Mr. Peavey. The court found upon such conflicting evidence that:

"Blaylock until the spring of 1934, and the plaintiff (respondent) as his successor in interest since said time, continued in open, notorious, continuous, *adverse and uninterrupted* use of said right of way until the spring of 1936."

While the evidence is in conflict with relation to the use between the spring of 1931 and the spring of 1936, the court found, upon ample evidence, in respondent's favor. Among other cases in support of his position appellant cites *Hall v. Blackman*, 8 Ida. 272, 68 Pac. 19, and quotes from *Hall v. Taylor*, 57 Ida. 662, 67 Pac. (2d) 901, as follows:

"An adverse right is not originated by consent but rather against the will and without the consent of the true owner, and generally rests on an original trespass, which matures into a property right by reason of the true owner allowing the claimant or trespasser to continue the adverse use and possession uninterruptedly and with assertion of right until the statutory period has run, which bars the true owner from either asserting or defending his right to the property."

which proposition may be conceded to be correct. Appellant then in effect asks the court to presume, from a lack of evidence to the contrary that Blaylock's and respondent's use was originated in and continued by consent of appellant, or as a permissive use by him, and thus was not adverse. Appellant relies upon the propositions, quoting from his brief, that:

"Thus from 1928 to 1931 appellant had no knowledge of the use of the right of way by Blaylock."
and:

"There is practically no testimony as to the circumstances under which the right of way was used by Blaylock or to what extent from the spring of 1931 to 1934, *and the only reasonable inference to be drawn* from the record is that the same was used by Blaylock with appellant's permission."

The lack of knowledge on appellant's part, as heretofore related, is not supported by the record. Appellant's argument, as appears from the foregoing, is in effect that because of the lack of evidence *pro* or *con,* with relation to the 1928–1934 period, it is to be presumed that the use was permissive, which theory is contrary to the rule heretofore announced in *Taylor v. O'Connell,* 50 Ida. 259, 295 Pac. 247, and reiterated in *Bachman v. Reynolds Irr. Dist.,* 56 Ida. 507, 55 Pac. (2d) 1314, namely:

"The evidence is without conflict that the (roadway and bridge) were used by (respondent and its predecessor) uninterruptedly and continuously for more than the prescriptive period, *which raised a presumption that such use was adverse and under a claim of right* (19 C. J. 959); and there is no sufficient evidence of parol license to overcome this presumption." (Emphasis inserted.)

The rule appears to be applicable herein. As heretofore pointed out the evidence discloses without conflict that the roadway and bridge were used by respondent and his predecessor uninterruptedly and continuously from 1928 until 1934, more than the prescriptive period, and likewise the court found upon ample evidence, though conflicting, that the roadway and bridge were used by respondent and his predecessor uninterruptedly and continuously from 1928 until 1936, which

raised a presumption that such use was adverse and under a claim of right.

The question possibly remains as to whether or not there was sufficient evidence of parol license or permissive use to overcome this presumption. It appears there are two possible periods, equal to or greater in length than the five-year statutory limitation period, which may be considered, that is, the period starting in 1928 and ending five or more years thereafter, and the period starting in the spring of 1931 and ending in the spring of 1936.

Considering first the period from the spring of 1931 to the spring of 1936, the evidence discloses that Will Hobson surrendered his contract to purchase the land and moved from the land of appellant in the spring of 1931 and appellant took actual possession. At this time the bridge and roadway were in existence and had been used for some years, and use thereof continued openly, notoriously and uninterruptedly until, as the court found and as the evidence discloses the spring of 1936, a period of five years, during which period appellant was in actual possession and enjoyment of the use of the land. During such period there was no permissive use or use under a parol license.

With relation to the period from 1928 to more than five years thereafter, the record conclusively shows that there was no permissive use on appellant's part, in fact Blaylock testified that appellant objected from the beginning and appellant testified, referring to a time he "supposed" was after his brother had moved off his land, as follows:

"Q. What was said between you and Mr. Blaylock about him acquiring a right of way or permission to construct a bridge and so on—did you reach an agreement on that?

"A. No, sir, there's never been nothing agreed on yet."

The only evidence of any sort of an agreement with relation to the use of the right of way is that agreement between Will Hobson and Blaylock, which agreement clearly does not appear to have been a permissive use as between Will Hobson and Blaylock but rather a parol agreement that Blaylock might have an easement immediately and that thereafter he would pay the price fixed by Will Hobson and satisfy any claims there might be because of the well in

the road. It appears that no claims with reference to the well ever arose which could be settled and no price was ever set or fixed by Will Hobson which could be paid. In so far as Blaylock was concerned the purported contract or agreement with Will Hobson was fully executed in so far as it could be. It does not appear necessary to determine whether the agreement between Will Hobson and Blaylock clothed appellant with any benefits or rights or whether it was binding upon him in any way, as it appears that such agreement did not constitute either consent, license, neighborly accommodation or permissive use on the part of either appellant or Will Hobson. The record also discloses that possibly as early as 1928 appellant was aware of such agreement, which by its very nature was adverse to appellant's rights, but appellant did nothing with reference thereto or with reference to the use of the right of way until after the limitation period had run. (*Kelly v. Palmer*, 91 Minn. 133, 97 N. W. 578.) Blaylock testified:

"Q. Later on did you carry out that agreement with him? (Will Hobson.)

"A. Well, I did until he left and Hobson (appellant) took possession again, *and he objected to it—he did when I started*—and he wouldn't give the deed for the easement."

The record discloses that Blaylock started but once, in 1928, which leaves but one interpretation to be placed upon such testimony, namely that appellant objected to the agreement between Will Hobson and Blaylock in 1928. It appears that the agreement between Will Hobson and Blaylock is of no particular moment and has no effect upon the question of adverse use, inasmuch as the agreement did not amount to a permissive use, further that there was some evidence of appellant's actual knowledge of the adverse character of the claim of respondent's predecessor as early as 1928, and it appears that from the spring of 1931, at which time appellant went into actual possession of the land, and as the court in effect found, permitted the statutory period to run before notifying respondent's agent to cease using the right of way.

Appellant urges that the court erred in failing to find that he is the owner of the bridge and in failing to enter

judgment quieting title thereto in appellant. No authority is cited and the brief of appellant contains no argument with relation to the efficacy of the purported bill of sale. It is to be borne in mind that the court found upon ample evidence that the right of way, consisting of the road and the bridge became appurtenances to the lands of respondent. We find no authority sustaining the proposition that title to appurtenances to real property may be conveyed by means of a bill of sale when the same is a part of realty subject to a mortgage. The entire effect of the bill of sale amounted to no more, if anything, than a recognition on the part of appellant of the existence of a right of way across his lands, and conveyed no title in such right of way.

The judgment of the trial court is equitable and just. A portion of the road lies north of the canal and is upon appellant's land. The bridge, without which the road is valueless, is upon the land of appellant at its northerly end and upon the land of respondent at its southerly end, and the road and bridge is used by appellant to reach certain lands of appellant which lie on the south side of the canal as well as lands of respondent lying on the south side of the canal. The judgment gives respondent an easement in that part of the road and bridge to the north of the canal and on and across appellant's land, and gives appellant an easement, jointly with respondent in that part of the right of way, the bridge and road to the south of the canal which is on and across respondent's land.

The judgment is affirmed. Costs awarded to respondent.

Holden, C. J., and Ailshie, J., concur in the conclusion.

MORGAN and GIVENS, JJ., Dissenting.—Respondent's right of adverse possession rests upon the period of use and occupancy by Blaylock, purchaser from Will Hobson, vendee of George Hobson, and Blaylock's own testimony clearly and unequivocally shows he never claimed to hold adversely to either of the Hobsons:

"Q. Now, how did you acquire this property, who did you negotiate with?

"A. The right-of-way, you refer to?

"Q. Yes.

"A. Well, I supposed I was in an agreement to buy the right-of-way from Will Hobson, his brother, to George.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Who did you negotiate with or deal with about this right-of-way or about building the bridge?

"A. Will Hobson.

"Q. And who was Will Hobson?

"A. That is a brother to George; he was tenant at the time and was really on a contract for the property with George, as I understand it, and the only agreement to start with was an oral agreement, and later on of course I found the deed to the property couldn't be given; it had to be given through Mr. Hobson here on account of him still owning the property.

"Q. What kind of oral agreement did you have with Will Hobson?

"A. We had an agreement that I was to pay him so much for the 21-foot right-of-way straight north and if necessary to satisfy the claims of a community well that is in the center of the road as you leave the highway to turn south; there was a three-cornered deal on the well and I was to satisfy that, take care of that, involving so much for the property.

"Q. Did you have an agreement how much you were to pay for the property?

"A. I can't give you the exact figure, but he said he would make the price right.

"Q. You say this was in about '28?

"A. '28 or '29—I think it was '28, I can't say definitely.

"Q. Later on did you carry out the agreement with him?

"A. Well, I did until he left and Hobson took possession again, and he objected to it—he did when I started—and he wouldn't give the deed for the easement.

"Q. So you never did receive the deed for the easement?

"A. No, I never did.

"Q. And you never paid for the easement?

"A. No."

Failure to claim in hostility to the owner is a fatal defect or lack in adverse possession as held by this court under

similar circumstances, *Davis v. Devanney*, 7 Ida. 742, 744, 65 Pac. 500, 501; *McCutchen v. McCutchen*, 77 S. C. 129, 57 S. E. 678; 1 A. L. R., n. 1336; 12 L. R. A., N. S., 1140:

"The evidence discloses the fact that the defendant's use of said ditch was as follows: For about two years under a contract to purchase the lands now owned by plaintiffs, and to which said ditch appears to be appurtenant, from one Frank Gooding, but which contract to purchase was never completed, but was canceled. For the next succeeding two years, another party spoken of in the evidence as 'the little Frenchman,' held said land and ditch under a contract to purchase the same from said Gooding, but this contract was never completed, and the lands reverted back to Gooding: But while said Frenchman held the same the defendant used said ditch and lands with his permission. Then for about two years following, Pat Devanney, a son of the defendant, held said lands and ditch under contract to purchase from said Gooding, but this contract was never completed, and said land and ditch reverted back to said Gooding, the defendant using the ditch during the two years that his son held the same. The evidence shows that plaintiffs purchased from said Gooding. While the finding of fact that the defendant used said ditch for six years is correct, it is apparent from the evidence that such use was a permissive one, and not such as possesses any of the elements of adverse user upon which a title by prescription could be founded. The pleadings do not support the judgment. The findings of fact are incomplete, and do not support the judgment. A title by prescription cannot be obtained by permissive use and occupation. For the foregoing reasons, the judgment is reversed. . . . . "

Blaylock holding under an agreement to purchase the right of way was not holding in hostility and never claimed as such an adverse right. The above principle has been approved since *Davis v. Devanney, supra,* as follows:

"In *Davis v. Devanney*, the claim of adverse possession was predicated upon a possession of some six years under contract to purchase the premises which consisted of a dam and irrigation ditch and land lying under the ditch. This court held in that case that a title by adverse possession or pre-

scription could not be obtained by permissive use and occupation.

"An examination of the other cases cited by appellant discloses that the same principle runs through those cases that has been uniformly maintained in the cases just reviewed. The principle upheld in all these cases, and I take it to be a well-established principle of law, is that whenever the claimant enters into possession under an agreement or contract, whereby in any event or upon the happening of any contingency he may be under the duty or necessity of restoring possession to the grantor or true owner of the premises, then and in that case his possession is the possession of his grantor or the true owner, and cannot be considered as adverse to the possession of him under and from whom he received his possession.

"The citation from Rose's Notes is an extract from *Zeller's Lessee v. Eckert,* 4 How. (U. S.) 289, 11 L. Ed. 979, where it is said: 'When one enters in privity with the owner the statute does not begin to run until there is a clear, positive, open disavowal of his title brought home to his knowledge.' This is undoubtedly a correct statement of the law, but there seems to have been more or less confusion among the courts as to just when a person enters or holds in privity with a grantor or adversely to him. It is clear, however, upon principle, that one who purchases a tract of land and pays the purchase price and enters into possession thereof, believing he has title, whether he receives a good deed of conveyance, an imperfect one, or no deed at all, nevertheless enters into a possession adversely to the vendor and all the rest of the world, and while the entry is made with the permission of the owner it is from that moment adverse to him, and an adverse and hostile possession is the real intent of the party to such contract. A phase of this character of entry and possession is considered in *Merryman v. Bourne,* 9 Wall. (76 U. S.) 592, 19 L. Ed. 683; *Bybee v. Oregon etc. R. Co.,* 139 U. S. 663, 11 Sup. Ct. 641, 35 L. Ed. 305; *Oregon Short Line Ry. Co. v. Quigley,* 10 Ida. 770, 80 Pac. 401." (*Fountain v. Lewiston Nat. Bank,* 11 Ida. 451, 468, 83 Pac. 505.)

The last of the above quotation does not aid respondent because Blaylock, as set forth above, stated he never paid for the right of way; hence, his agreement to purchase and holding thereunder never ripened into adverse possession. The above is the generally accepted rule. (3 Idaho Law Journal 48, 58; *Bower v. Kollmeyer,* 31 Ida. 712, 717, 175 Pac. 964; *White v. Garrett,* 49 Ida. 136, 286 Pac. 362; *Koon v. Empey,* 40 Ida. 6, 12, 231 Pac. 1097; *Kelley v. Smith,* 47 Ida. 368, 276 Pac. 302; 26 C. J. 122, sec. 205 et seq.; 2 C. J. S. 568, sec. 53 et seq.) Likewise it is generally held that the purchaser from a vendee, both under executory contracts unperformed may not hold or claim adversely to the original vendor. (2 C. J. 155, sec. 276; 2 C. J. S. 675, sec. 121d; *Jenkins v. McMichael,* 17 Pa. Super. Ct. 476.)

Respondent having failed to show one of the prerequisites to sustain adverse possession the judgment should be reversed and the cause remanded.

### ON PETITION FOR REHEARING.

(July 6, 1938.)

AILSHIE, J.—Appellant has petitioned for a rehearing and, among other things, seems to feel aggrieved because the Chief Justice and the writer did not state the grounds on which we concurred "in the conclusion." It seemed to us enough that we concurred in an affirmance of the judgment. I felt at the time, and still entertain no doubt, that the judgment of the trial court is just and equitable and that it should be affirmed. The Chief Justice expressed the same conclusion. I thought, however, at the time, and still think, that the decision is better grounded on the rule of estoppel *in pais* than that of either adverse possession or prescription. Since no three members of the court are agreed upon the fundamental rule on which the decision should be grounded, it seemed wholly useless to enter into any discussion as to the law governing the case. Now that a petition for rehearing has been presented, I will briefly state the reason why I think the judgment of the trial court is correct.

Respondent's predecessor, Blaylock, entered into the possession and use of this roadway, with the full knowledge and consent of appellant's brother, Will Hobson, who was in possession of the premises under agreement to purchase. Blaylock's use, and the purpose for which he took possession, was known to the tenant in possession and must, in all reason, have been known to appellant, the owner of the fee who resided within a few miles of this land. Furthermore, in the face of this condition and these circumstances, with full knowledge of the purpose for which Blaylock was preparing this roadway, the Hobsons stood by and not only permitted but encouraged the expenditure by Blaylock of more than $500 in the construction of a bridge across the canal. This expenditure can only serve for one purpose, and that is, for a passageway or roadway across the canal.

They not only made no protest against this improvement by respondent's predecessor in interest but immediately upon its completion began to use it, themselves, jointly with Blaylock. They allowed Blaylock to grade the road and to use material taken off of appellant's place, for fencing the roadway. Appellant made no objection to the use of this road, according to his own admission, until '34 or '35; and according to the testimony of Mr. Peavey, agent of respondent, not until the spring of '36. At any rate, no objection seems to have been made until after respondent had foreclosed on the tract of land for which this roadway and bridge were constructed and for which a right of way for travel was necessary. To allow appellant now to exclude respondent, its tenants, agents or successors from the use of the roadway, would be to give appellant the benefit of all these improvements (the grading of the road, building of fences, construction of bridge across canal), without any consideration therefor and to the damage and detriment of respondent, in whatever sum it might cost to procure another roadway to its premises. The doctrine of estoppel *in pais* is peculiarly applicable to this state of facts and precludes appellant at this late date from denying respondent's right to the joint use, with appellant, of this roadway. (*State of Missouri ex Inf. Shartel, etc., v. Missouri Utilities Co.,* 331 Mo. 337, 53 S. W. (2d) 394, 89 A. L. R. 607; *James v. Nelson,* 90 Fed. (2d) 910;

*Noble Gold Mines Co. v. Olsen*, 57 Nev. 448, 66 Pac. (2d) 1005.)

It has been suggested in conference by one of my associates that plaintiff did not plead estoppel and that therefore the judgment could not rest upon that principle. My reply to this suggestion is, that, in the first place, no question is raised in this court as to the sufficiency of the complaint. In the second place, that the allegations of the complaint are as ample to support the judgment on the theory of estoppel *in pais* as they are to support a judgment on adverse possession, prescription or any other theory. The first paragraph of the complaint alleges plaintiff's corporate existence, which was admitted by defendant. The remainder of the complaint in full is as follows:

"2. That the plaintiff was on or about the year of 1928 entitled to the joint use of a right of way commencing from the North line of Section Eight (8), Township Ten (10) South, Range Fifteen (15), East of the Boise Meridian, and being a part thereof, and running South along the East line of the East Half (E½) of the Northwest Quarter, Section Eight (8), Township Ten (10) South, Range Fifteen (15), East of the Boise Meridian, Twin Falls County, State of Idaho, and being a part thereof, to the Low Line Canal. The said Right of Way being about Eighteen feet in width, and ever since has been and now is entitled to said use of said Right of Way.

"3. That on or about the 1st day of March, 1936, the defendant, without any right whatever, has prohibited and does prohibit the use of said Right of Way, and has notified the plaintiff or its agents that they cannot use said Right of Way and has posted signs 'No Trespassing' at the entrance of said Right of Way; that said Right of Way was graded by B. F. Blaylock, during the time he was owner and in possession of the Southwest Quarter of the Northeast Quarter and that part of the Northwest Quarter of the Northeast Quarter of Section Eight (8), Township Ten (10) South, Range Fifteen (15), East of the Boise Meridian, Twin Falls County, State of Idaho, the plaintiff herein, having a real estate mortgage on same, the said B. F. Blaylock also constructed a bridge at his own expense across the Low Line

Canal, which is partly on the property belonging to this plaintiff and partly on the property belonging to the defendant herein; that the only ingress to and egress from plaintiff's land is by this right of way; that the defendant has ordered the tenant of the plaintiff to keep out of said Right of Way, and thereby interferes materially with the right of plaintiff to the ingress and egress from his said property; that defendant has by his acts aforesaid, diminished the value of plaintiff's property in the sum of $500.00, to plaintiff's damage in the sum of $500.00.''

It will be seen from the foregoing that paragraph three states the facts on which estoppel *in pais* might be predicated.

Another thing about this case, worthy of observation, is this: Respondent in no way seeks to interfere with or exclude appellant in the use of this roadway. It concedes to appellant the like right to use the road at any and all times, so that its use of the easement is not exclusive and in no way interferes with appellant's use thereof in any and every way he may desire to use it, so long as he does not obstruct it or prevent respondent's use thereof. It would clearly be inequitable, unjust and unfair to now preclude respondent the right to pass over this roadway or to give its exclusive use and occupancy to appellant. The petition is denied.

Holden, C. J., concurs.

BUDGE, J.—I still adhere to the views expressed in my former opinion. However, if I am in error in that respect, I would have no hesitancy in agreeing with Justice Ailshie, in applying the rule of estoppel to the facts of this case.

MORGAN and GIVENS, JJ.—Estoppel was neither plead, proved, relied upon or argued, therefore we continue to assert and adhere to our previous dissent.