511 P.2d 1326

Vernon J. WEST et al., Plaintiffs-Appellants,

v.

James E. SMITH and Mrs. James E. Smith, husband and wife, Defendants-Respondents.

No. 11044.

Supreme Court of Idaho.

July 5, 1973.

J. T. Knudson, Coeur d'Alene, for appellants.

James W. Givens, Lewiston, for respondents.

McQUADE, Justice.

Vernon and Arlene West are the record title owners of Government Lot 3, Section 2 Township 47 North, Range 4 W.B.M., Kootenai County, Idaho, which lot abuts the westerly shore of Lake Coeur d'Alene, a navigable lake. Guy and Patricia Dumais contracted to purchase lot 3 and another lot from the Wests in May, 1970. The Dumaises plan to develop, subdivide, and sell the lots. Until 1935, a privately operated, commercial ferryboat ran between Harrison, Idaho, and Spokane Point, a designation which is located on the shore-

line of lot 3. A county road, which was acquired by prescription, runs in a north-south direction near the shore of lot 3 and culminates in a widened turnaround at the point where the ferry formerly docked. The road continues along the lake shore south from the turnaround, but that portion of the road is privately owned.

Since approximately 1945, a houseboat has been moored to pilings driven into the lake bed at the point where the ferryboat docked. Mr. and Mrs. James E. Smith purchased the houseboat in 1965 and have since paid personal property taxes on it and occupied it intermittently. The houseboat is connected to the shore by a catwalk two feet in width which terminates on the turnaround of the public roadway. Plaintiffs' exhibit 1, a scale drawing of the shore and the houseboat, also indicates that there is a somewhat larger floating dock structure owned by respondents interposed between the houseboat and the catwalk.

At a date not disclosed by the record, but apparently after 1890, the predecessor of the Washington Power Company raised the level of Lake Coeur d'Alene several feet by constructing a dam at Post Falls, Idaho. The record does not indicate the elevation or location of the natural high water mark of the lake before the dam was built. According to the record the Washington Power Company has generally maintained the level of the lake at approximately 2,128 feet above sea level since 1910. According to plaintiffs' exhibit 1, when the water is at the average of 2,128 feet, the edge of the water is 13 feet from the edge of the maintained portion of the turnaround. The artificial post-1910 high water mark is shown to be 7 feet further inland and thus approximately 6 feet from the edge of the maintained portion of the turnaround. The slope of the bank from the traveled edge of the turnaround to the water's edge is fairly steep. The plaintiffs' plat indicates that the side of the houseboat closest to shore is approximately 53 feet from the edge of the water at the 2,128 foot level.

The Wests and the Dumaises brought suit to compel the Smiths to move the houseboat and its appurtenances or in the alternative, to pay $10,000 damages. They allege that the maintenance of the houseboat and its appurtenances constituted an undue interference with their littoral rights. Appellant Dumais testified that the houseboat in its present position hindered his development plans. The Smiths cross-complained for an injunction to prevent the appellants from interfering with their peaceful use of the houseboat in its present location.

The parties stipulated that Mr. Madison, who owned lot 3 when the houseboat was first moored there, was aware of its existence, that the houseboat did not interfere with any use he was making of the property, and that, during his ownership, he never requested that it be removed. They further stipulated that Mr. Madison and his wife conveyed the property to the Lafferty Transportation Company, a corporation, (name later changed to L. T. Land Company) in March, 1959, and that during the corporation's ownership of the property, the then occupiers of the houseboat would notify the corporation when logs which the company was storing in the bay got loose. They further stipulated that Vernon and Arlene West acquired lot 3 in September, 1968, and that the houseboat did not interfere with any use they were making of the property until they contracted to sell it to the Dumaises.

The following findings and conclusions of the district court are undisputed. The houseboat and the pilings to which it is moored are located below the natural high water mark of the lake on lands belonging to the State of Idaho. (This finding appears based on evidence not in the record before us.) Appellants' littoral rights include the right of access to the lake without unreasonable interference from other persons entitled to use the navigable waters of the lake. The county road easement does not sever appellants' land or cut off their right of access to the lake along that por-

tion of the shore of lot 3 traversed by the road.

However, the appellants contend that the district court erred in making these further findings and conclusions: The terminus of the county road (the turnaround) is at the water's edge. The houseboat does not unreasonably interfere with the appellants' right of access to the lake. The only point where the appellants are hampered in obtaining access to the lake is at the point where the walkway from the houseboat comes to land on the public roadway. The respondents are making use of a public way as a means of ingress and egress to the navigable waters of the lake. Because the houseboat has been maintained in its present location for over 20 years, and was there when the Dumaises contracted to purchase the property, the appellants are estopped, and barred by the statute of limitations, from demanding removal of the houseboat.

From the decree of the district court denying them both injunctive relief and damages, the Wests and Dumaises have appealed. The appellants assign error to findings and conclusions of the district court other than those enumerated above, but an examination of those alleged errors is not necessary for a resolution of this case.

■■ One of the salient features of the shores of navigable lakes is the convergence of the rights and interests of the state, the public and the littoral landowner. The State of Idaho holds title to the beds of all navigable bodies of water below the natural high water mark for the use and benefit of the whole people.[1] Ordinarily, in Idaho, a riparian owner (on a navigable river or stream) or a littoral owner (on a navigable lake) takes title down to the natural high water mark.[2] On this appeal, the respondents seem to urge that the long-continued maintenance of Lake Coeur d'Alene at its artificial level has conferred title to the lake bed, up to the artificial high water mark on the State of Idaho. However, ownership of title to the lake bed between the natural and artificial high water marks is immaterial to our decision.

■ Appurtenant to his ownership of lake front property, the littoral landowner normally possesses certain littoral rights. These include the right of access to the water,[3] and, subject to state regulation,[4] the right to build wharves and piers in aid of navigation.[5] The right of access has been said to be a valuable right and, "in many instances * * * the controlling aspect of the value of [littoral] lands."[6]

The decision of the district court is implicitly based on two alternate grounds.

1. The Idaho Admission Bill declared that Idaho was "admitted into the union on an equal footing with the original states in all respects whatever." 26 Stat.L. 215, ch. 656 § 1. The United States Supreme Court in the case of Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 557, 38 L.Ed. 331 (1894) ruled that one aspect of the admission of a new state to the union on "equal footing" with the original states was that title to the beds of navigable waters below the natural high water mark was transferred from the United States to the state. Ever since the case of Callahan v. Price, 26 Idaho 745, 754, 146 P. 732, 735 (1915), it has been the settled law in Idaho that the state holds title to the beds of navigable waters below the natural high water mark "for the use and benefit of the whole people." *Id.*, 26 Idaho at 754, 146 P. at 735. Driesbach v. Lynch, 71 Idaho 501, 507, 234 P.

2d 446 (1951); Gasman v. Wilcox, 54 Idaho 700, 703, 35 P.2d 265 (1934). State ownership of the beds of inland navigable waters was confirmed in the Submerged Lands Act of 1953, 43 U.S. C.A. § 1311.

2. Driesbach v. Lynch, *supra* note 1, 71 Idaho at 507, 234 P.2d 446; Gasman v. Wilcox, *supra* note 1, 54 Idaho at 703, 35 P.2d 265.

3. Driesbach v. Lynch, *supra* note 1; Gasman v. Wilcox, *supra* note 1.

4. *See* I.C. § 58-104(9) (Supp.1972) *and* 42-3801 to -3810 (Supp.1972).

5. E. g., Hoff v. Peninsula Drainage Dist. No. 2, 172 Or. 630, 143 P.2d 471, 474 (1943).

6. Driesbach v. Lynch, *supra* note 1, 71 Idaho at 508, 234 P.2d at 450.

First, that the Smiths, in mooring their houseboat in its present position, are merely exercising a right which is incident to the public right of navigation, i. e. docking on a public lake with a catwalk connecting the houseboat to the public road. The alternate implied basis of the district court's decision is that the Smiths have acquired a private prescriptive right against the appellants and that the appellants are estopped from demanding the removal of the houseboat. We will first consider whether the Smiths are entitled to maintain the houseboat and catwalk in place by virtue of their membership in the navigating public. It must be noted here that the Smiths do not claim a right of moorage at that point as successors of the ferryboat proprietors.

 Subject to regulation by the state, the public is entitled to use the waters of Lake Coeur d'Alene for navigational and recreational purposes.[7] The right of the general public to navigate on navigable waters has been said to include the right of temporary anchorage.[8] We will assume that the public has the right to navigate on the waters of a navigable lake regardless of who holds title to the land under a particular part of the water.[9] There is substantial and competent evidence to support the district court's finding that the county road right-of-way at the location of the turnaround extends to the water's edge and this finding will not be disturbed.[10] However, the fact that a public roadway adjoins waters on which the public has a right to navigate, does not give one member of the public, acting solely for his private benefit, the right to install a fixed structure from the roadway into the water, which permanently interferes with the littoral owner's right of access to the lake from that point.[11]

██ The littoral owner's right of access to the lake, free from unreasonable interference, attaches to all points of his shoreline,[12] and in the case before us, the district court came to the undisputed conclusion that appellants' right to access to the lake was not extinguished by the county roadway easement. A fixed structure connecting a houseboat to the shore, erected by a private person for his own benefit, that permanently and continuously cuts off the littoral owner's access to the lake at that point constitutes an unreasonable interference with the upland owner's littoral rights and may properly be enjoined.[13] To permit the Smiths to maintain their catwalk in its present position solely on the

---

7. See I.C. §§ 67–4304, –4305; cf. Wilbour v. Gallagher, 77 Wash.2d 306, 462 P.2d 232, 239 (1969), cert. den. 400 U.S. 878, 91 S.Ct. 119, 27 L.Ed.2d 115 (1970); I. C. §§ 36–901, 58–104(9) (Supp.1972).

8. People v. Kraemer, 7 Misc.2d 373, 164 N.Y.S.2d 423, 433 (1957).

9. Burrus v. Edward Rutledge Timber Co., 34 Idaho 606, 202 P. 1067 (1921), a case which also dealt with Lake Coeur d'Alene at its artificial level; Wilbour v. Gallagher, supra note 7; People v. Kraemer, supra note 8; Mendota Club v. Anderson, 101 Wis. 479, 78 N.W. 185 (1899).

10. In the case of Meservey v. Gulliford, 14 Idaho 133, 148, 93 P. 780 (1908), this Court held that the width of the right-of-way of a public road acquired by prescription is presumed to be fifty feet. A public road acquired by prescription and maintenance is a "highway." I.C. § 40–103. I.C. § 40–107 (Supp.1972) provides:

"Highways * * * shall include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, bridges, tunnels, grade separation structures, roadside improvements, adjacent lands or interest therein lawfully acquired, pedestrian facilities, and any other structures, works or fixtures incidental to the preservation or improvement of such highways."

Thus the appellants' contention that the county road right-of-way is limited to the flat, traveled, portion of the turnaround is without merit.

11. Knight v. Ciarlone, 200 N.Y.S.2d 805 (1959); Musgrove v. Cicco, 96 N.H. 141, 71 A.2d 495 (1950).

12. Johnson v. Jeldness, 85 Or. 657, 167 P. 798, 799 (1917); Peck v. Alfred Olsen Construction Co., 238 N.W. 416, 89 A. L.R. 1132 (Iowa 1931).

13. See Anderson v. Reames, 204 Ark. 216, 161 S.W.2d 957 (1942).

basis that they are exercising a right belonging to the navigating public, would justify others to build similar catwalks connecting houseboats to the public roadway along the entire stretch of county road bordering the lake.[14] We do not support such conclusion.

We turn now to an examination of the question of whether the Smiths have acquired a private prescriptive right to maintain their houseboat and catwalk as presently located. It is important to note here that any prescriptive right which the Smiths may have acquired pertains only to their position in relation to the owners of lot 3. A private person cannot obtain a prescriptive right against the state with respect to navigable waters,[15] nor can a private person acquire a prescriptive right to encroach upon a county road.[16] However, whereas the right of the state and its political subdivisions to demand the removal of obstructions from public ways is never barred by the running of the prescriptive period, the right of private persons may be. In regard to a closely analogous case, that involving the right of a private person for relief from a public nuisance which does him special harm, a California court has said:

" 'We cannot say that a private prescriptive right to private property may not be obtained by means of acts which may also constitute or cause a public nuisance. The private owner who is injured has a right of action in case of special injury, and such right is barred in the same manner as other actions of like nature. A private owner, so injured, cannot invoke the protection of the public right to abate the nuisance, which is not barred, and thus avoid the effect of the statute of limitations upon his private right of action.' " [17]

Therefore, we must examine the question of whether the Smiths have acquired a prescriptive right to maintain the houseboat in its present location, keeping in mind that our decision can have no effect on the rights of the state or the county with regard to the location of the houseboat. We feel that the general rules relating to the acquisition of private prescriptive easements may properly be applied to this case.

At this point, it is necessary to note the differences between easements appurtenant and easements in gross.

"[T]he real distinction between an easement in gross and an ordinary easement is that in the one there is, and in the other there is not, a dominant tenement to which it is attached. An easement in gross is not appurtenant to any estate in land, nor does it belong to any person by virtue of his ownership of an estate in land. It is a mere personal interest in or right to use the land of another. Such an easement is generally not assignable or inheritable and cannot be acquired except by a grant in writing or by prescription which presupposes a grant." [18]

The Smiths' ownership of the houseboat cannot be equated with ownership of an estate in land. Therefore, any prescriptive right which the Smiths may have acquired to maintain their houseboat permanently moored and connected to the land would be in the nature of an easement in gross, or purely personal right, rather than a right appurtenant to the ownership of the houseboat. This fact is important because, under the general rule, *supra*, easements in gross are not assignable. Furthermore, a right gained by prescription is confined to the right as exercised during the prescrip-

---

14. Knight v. Ciarlone, *supra* note 11, 200 N.Y.S.2d at 806.

15. State v. Malmquist, 114 Vt. 96, 40 A.2d 534 (1945).

16. Rich v. Burdick, 83 Idaho 335, 362 P.2d 1088 (1961); State v. Idaho Power Co., 81 Idaho 487, 501, 346 P.2d 596 (1959).

17. Mosier v. Mead, 283 P.2d 378, 381 (Cal. App.1955) quoting Hudson v. Dailey, 156 Cal. 617, 630, 105 P. 748, 754 (1909).

18. 2 G. Thompson, Real Property 89–90 (1961 Replacement).

tive period.[19] Therefore, any prescriptive right which the Smiths may have acquired applies solely to them and not to guests or assignees.

In order for a claimant to establish that he has acquired a private prescriptive easement by adverse use, he must submit "reasonably clear and convincing"[20] proof of open, notorious, continuous, uninterrupted use, under a claim of right,[21] with the knowledge of the owner of the servient tenement,[22] for the prescriptive period.[23] "Under a claim of right" signifies use without recognition of the rights of the owner of the servient estate.[24] Thus, a prescriptive right cannot be acquired if the use of the land is with the permission of its owner.[25] Absent estoppel,[26] permission to use the land of another can be revoked at any time, no matter how long the permitted use has continued.[27]

Although language in one Idaho case,[28] and in some cases from other jurisdictions, implies that acquiescence on the part of the owner of the servient tenement is synonymous with consent and permission, the better rule draws a distinction. In the ordinary case,[29] mere inaction and passive acquiescence is not a sufficient basis for proving that the use of the claimed right was with the permission of the owner of the servient tenement.[30]

The general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under a claim of right.[31] The burden is then on the owner of the servient tenement to show that the use was permissive, or by virtue of a license, contract, or agreement.[32]

There is substantial evidence that during the Smiths' ownership of the houseboat, it was moored in its present po-

19. Kirk v. Schultz, 63 Idaho 278, 290, 119 P.2d 266 (1941).

20. Last Chance Ditch Co. v. Sawyer, 35 Idaho 61, 66, 204 P. 654 (1922).

21. Trunnell v. Ward, 86 Idaho 555, 559, 389 P.2d 221 (1964); Cox v. Cox, 84 Idaho 513, 521–522, 373 P.2d 929 (1962); Sinnett v. Werelus, 83 Idaho 514, 522, 365 P.2d 952 (1961).

22. *See* N. Western & P. Hypotheekbank v. Hobson, 59 Idaho 119, 80 P.2d 793 (1938).

23. The prescriptive period of 5 years is set by I.C. § 5–203. Deer Creek, Inc., v. Hibbard, 94 Idaho 533, 493 P.2d 392 (1972).

24. Andrzejczyk v. Advo System, Inc., 146 Conn. 428, 151 A.2d 881, 883 (1959).

25. *E. g.*, Cox v. Cox, *supra* note 21, 84 Idaho at 523, 373 P.2d 929.

26. McReynolds v. Harrigfeld, 26 Idaho 26, 140 P. 1096 (1914).

27. Radke v. Union Pacific Railroad Co., 138 Colo. 189, 334 P.2d 1077 (1959).

28. Simmons v. Perkins, 63 Idaho 136, 144, 118 P.2d 740 (1941).

29. See note 32 for the exception to this rule.

30. Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585 (1944); Hall v. Taylor, 57 Idaho 662, 67 P.2d 901 (1937); White v. Kamps, 119 Mont. 102, 171 P.2d 343 (1946); Northwest Cities Gas Co. v. Western Fuel Co., 13 Wash.2d 75, 123 P.2d 771 (1942).

31. Deer Creek, Inc., v. Hibbard, *supra* note 23, 94 Idaho at 534, 493 P.2d 392; cases cited note 21, *supra*.

32. Deer Creek, Inc. v. Hibbard, *supra* note 23, 94 Idaho at 534–535, 493 P.2d 392; Sinnett v. Werelus, *supra* note 21, 83 Idaho at 522, 365 P.2d 952; Eagle Rock Corp. v. Idamont Hotel Co., 59 Idaho 413, 431, 85 P.2d 242 (1938).
When the lands over which the prescriptive easement is claimed are wild, unenclosed, or unimproved, the presumption of adversity does not apply. In such a

sition openly, notoriously, continuously, uninterruptedly, and with the knowledge of the owners of lot 3, for a length of time in excess of the prescriptive period of five years. These circumstances raise the presumption that the maintenance of the houseboat in its present location was adverse and under a claim of right. Implicit in the conclusion of the district court that the Smiths had acquired a prescriptive right, against the owners of lot 3, to leave the houseboat and catwalk where they are, is the finding that the appellants had not met their burden of proving that the use was permissive. From the record, we see no reason to disturb this finding. The only evidence presented by the appellants was that they and their predecessors knew that the houseboat was moored there and did nothing about it. This is not a sufficient showing of permission to rebut the proof of adversity arising from the other circumstances of the case.

Thus, respondent has prescribed part of appellants' littoral rights. Therefore, insofar as the judgment of the district court held that the appellants are barred from demanding the removal of the houseboat and catwalk, the judgment is affirmed. As mentioned, supra, this decision can have no effect on the rights of the state and the county with regard to the location of the houseboat.

Judgment affirmed. Costs to respondents.

DONALDSON, C. J., and SHEPARD, McFADDEN and BAKES, JJ., concur.

case, it is presumed that the use by the claimant was permissive. Trunnell v. Ward, *supra* note 21; Cox v. Cox, *supra* note 21; 28 C.J.S. Easements § 68 p. 737 (1941). Appellants have suggested that lot 3 is wild land and urges the application of the presumption of permissive use to this case. From the record, it is apparent that lot 3 is not "wild land" in the sense contemplated by the exception to the general rule. Therefore, the appellants are not entitled to the benefit of the presumption of permissive use.