968 P.2d 661

Ronald J. WALKER and Vicki Walker,
husband and wife, Plaintiffs–
Respondents,

v.

Jay D. HOLLINGER, an individual, and
Carol L. Bradshaw, an individual,
Defendants–Appellants.

James R. MARTIN and Colene G. Martin,
husband and wife, Allan G. Cameron
and Carle A. Cameron, husband and
wife, Todd A. Bartolome and Melonie S.
Bartolome, husband and wife, James
Davis and Susan C. Davis, husband and
wife, Alice Thuma, Bradley Callahan
and Debbie Callahan, husband and wife,
Davis Short and Ruth K. Short, husband
and wife, Lesley Bahner and John Fied-
ler, husband and wife, Joann L. Hal-
basch and Lyle G. Halbasch, husband
and wife, Carlo Difebbo, Jim C. For-
sythe, Daniel R. Herrity, Arville O.
Glenn and Brenda A. Glenn, husband
and wife, and Does 1 through 300, Plain-
tiffs–Respondents–Cross Appellants,

v.

Jay D. HOLLINGER and Carol L. Brad-
shaw, as co-owners of a certain parcel of
real property located in Boise County,
Idaho, Defendants–Appellants–Cross Re-
spondents.

No. 23345.

Supreme Court of Idaho,
Boise, September 1998 Term.

Nov. 27, 1998.

Pike & Shurtliff, Boise, for appellants. M. Karl Shurtliff argued.

Fitzgerald & Fitzgerald, Meridian, for respondents, the Walkers. John O. Fitzgerald, II, argued.

Snyder, Matthews & Nelson, Boise, for respondents, the Martin Group. William R. Snyder argued.

SCHROEDER, Justice.

This appeal involves a claim for a prescriptive easement. The district court granted summary judgment in favor of certain lot owners in the Wilderness Ranch Subdivision after determining that a prescriptive easement existed in their favor over the property of Jay Hollinger and Carol Bradshaw (the Hollingers). The Hollingers appeal, arguing that the district court applied the wrong legal theory in concluding that a prescriptive easement exists. Some of the lot owners cross appeal, claiming the district court erred by dismissing their claim for reservation of an easement by deed and easement by implication.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

This appeal involves the consolidation of two cases. The plaintiffs in the first case are Ronald and Vicki Walker (the Walkers). The plaintiffs in the second case are referred to collectively as the "Martin Group." The district court made several factual findings common to both cases which are undisputed, including, but not limited to, the following:

1. The parties who comprise the Martin Group and the Walkers presently own lots in the Wilderness Ranch Subdivisions.

2. The Hollingers are owners of property that borders on Wilderness Ranch Subdivision No. 1 on one side and Daggett Creek Road on the other side.

3. Prior to the time that the Walkers, the Martin Group and the Hollingers purchased their properties, the lands encompassing both the Wilderness Ranch Subdivisions and the Hollinger property was part of a single large parcel. In 1980, Wilderness Ranch Ltd., a limited partnership, purchased the entire tract and started to develop it by platting and subdividing most of the tract into a number of subdivisions. There was and is a private road running through the parcel that connects

with Daggett Creek Road, a public road. Daggett Creek Road in turn connects with State Highway 21, the primary road between Boise and Idaho City. The private road has existed since the late 1930's and is depicted on a Metsker map from 1940, a Boise National Forest map from 1959, and a geological survey map from 1969. It crosses what it now Wilderness Ranch Subdivision No. 1, crosses Daggett Creek by means of a bridge, and crosses forty or fifty feet of the Hollinger property before it intersects with Daggett Creek Road. Part of the Daggett Creek bridge is on the Hollinger property. The private road traditionally was used as a means of access to the entire tract.

4. When Wilderness Ranch was platted and subdivided, roads were constructed that provided access to Highway 21. The primary means of access is a road that crosses More's Creek and intersects Highway 21. The old private road became part of the road system in Wilderness Ranch and continued to provide access to Daggett Creek Road and ultimately to Highway 21. The declaration of covenants for Wilderness Ranch Subdivision No. 1 refers to access via Daggett Creek Road "only as a secondary or emergency means of access."

5. What is now the Hollinger property never has been part of any of the Wilderness Ranch Subdivisions.

6. The district court viewed the premises. The private road, as it crosses the Hollinger property, is open and obvious to the most casual inspection. Apparently the road has been in substantially the same condition for many years. It is constructed of dirt or gravel and is similar in quality to the roads within Wilderness Ranch itself. All the roads in the area, including the road in dispute, are windy and hilly and undoubtedly require extra caution during the winter months.

7. The private road across the Hollinger property has been used continuously by many residents of the Wilderness Ranch Subdivisions since the beginning of its development as a means of access from the development to Daggett Creek Road and Highway 21. It also is used occasionally by a rural volunteer fire department located in Wilderness Ranch to gain emergency access to fires along Daggett Creek Road outside the development. By using this route, the fire department can save a few minutes in response time.

8. From at least November 1989 until access was blocked in March 1995, the Walkers, the Martin Group and their predecessors in interest, during their respective periods of ownership, used the road across the Hollinger property regularly and continuously as a means of access between the Wilderness Ranch Subdivisions and Daggett Creek Road.

9. The Hollinger property was owned by Wilderness Ranch Ltd. from 1980 until the partnership sold it to the Hollingers on January 6, 1992. At that time, the Hollinger property was undeveloped, but shortly thereafter the Hollingers moved a mobile home onto the property.

10. From January 1992 until March 1995 the Hollingers did not physically prevent people from using the road across their property. In March 1995, the Hollingers closed the private road where it crosses their property. They erected a locked gate and a locked wire fence and placed rocks in the road, thereby effectively preventing anyone from using the private road on the forty or fifty feet that transverses their property. They have not directly interfered with the rest of the road, although their conduct indirectly impairs the use of the private road within Wilderness Ranch.

11. From time to time the Wilderness Ranch Homeowners' Association, of which the Walkers and the Martin Group and their predecessors in interest have been members, performed maintenance on the part of the road crossing the Hollinger property. The maintenance work ceased when access was closed.

12. As noted above, the Hollinger property was owned by Wilderness Ranch Ltd. at the time it platted and subdivided the various Wilderness Ranch Subdivisions. Myrl Schroeder, an officer and director of the general partner in Wilderness Ranch Ltd., submitted an affidavit in which he

testified that at the time Wilderness Ranch Ltd. started the development, it intended the road across the Hollinger property to be used as an alternate means of access to the subdivisions. Paragraph 13 of the first amended declaration of restricted covenants for Wilderness Ranch Subdivision No. 1 refers to access to the subdivision via Daggett Creek Road in the following language:

> The primary access to the property shall be from State Highway 21. *The Daggett Creek Road shall be used only as a secondary or emergency means of access.*

13. The recorded plat map of Wilderness Ranch Subdivision No. 1 shows a road that abruptly ends on the map at the place where the subdivision borders on the Hollinger property. This is the historic private road. If the Hollinger property had been shown on the plat map, the road as depicted would have continued through the Hollinger property to Daggett Creek Road.

14. Myrl Schroeder also testified in his affidavit that from the start of development, Wilderness Ranch Ltd. intended and believed that purchasers of lots in the subdivisions had the right to use the road across the Hollinger property. Consequently, the partnership never specifically gave permission to anyone to use the road. The partnership knew that purchasers of lots in Wilderness Ranch were using Daggett Creek Road as a means of access to their homes.

15. Although the Hollinger property was not developed at the time the Hollingers bought it, they do not deny that they knew of the road's existence. In fact they both admitted in their depositions that they observed the road when they were shown the property in 1991.

The Walkers filed suit against the Hollingers, alleging that an easement by prescription or by necessity existed in their favor. The Martin Group also filed suit against the Hollingers, alleging that a road easement existed in their favor based on the following theories: (1) easement by reservation in prior deeds, (2) easement by implication, and (3) acquisition by private condemnation. The Martin Group later amended their complaint to assert a claim for a prescriptive easement. Each of the respective parties filed a motion for summary judgment. The district court granted summary judgment in favor of the Walkers on their prescriptive easement claim, and after consolidating the cases, granted summary judgment in favor of the Martin Group on their prescriptive easement claim. Because this Court affirms the district court's decision to grant summary judgment in favor of the Walkers and the Martin Group with regard to the prescriptive easement issue, the Court will not address the issues raised on cross appeal by the Martin Group regarding easement by implication and easement by reservation in prior deeds.

## II.

## STANDARD OF REVIEW

■ Generally, when this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion. *Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). Summary judgment is proper "if the pleadings, depositions, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Both this Court and the district court liberally construe the record in favor of the party opposing the motion for summary judgment, drawing all reasonable inferences and conclusions supported by the record in favor of that party. *City of Chubbuck,* 127 Idaho at 200, 899 P.2d at 413.

■ The general rule for reviewing grants of summary judgments does not apply where the parties below filed cross motions for summary judgment, each relying on the same facts, issues and theories. "Where ... both parties file motions for summary judgment relying · on the same facts, issues and theories, the parties essentially stipulate that

there is no genuine issue of material fact which would preclude the district court from entering summary judgment." *Brown v. Perkins,* 129 Idaho 189, 191, 923 P.2d 434, 436 (1996). When the evidentiary facts are undisputed, leaving the dispute only as to inferences, the judge, as the trier of fact, may resolve the conflict between the inferences. *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 518–19, 650 P.2d 657, 661 (1982). The test for reviewing the inferences drawn by the district court is whether the record reasonably supports the inferences. *Id.* at 518–20, 650 P.2d at 662.

■ This Court exercises free review on the question whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of a prescriptive easement. *Roberts v. Swim,* 117 Idaho 9, 12, 784 P.2d 339, 342 (Ct.App.1989).

In the Walker case, the parties filed cross motions for summary judgment concerning the prescriptive easement issue; thus, the Court must treat the Walker case as if it had been tried on stipulated facts. In the Martin Group case, the only party to file a motion for summary judgment on the prescriptive easement issue was the Martin Group; therefore, the Court must apply the general standard of review to the district court's grant of summary judgment in favor of the Martin Group. In other words, the Court must determine whether a genuine issue of material fact exists, and if not, whether the moving party (the Martin Group) is entitled to judgment as a matter of law.

### III.

### A PRESCRIPTIVE EASEMENT EXISTS IN FAVOR OF THE WALKERS AND THE MARTIN GROUP UNDER THE TRADITIONAL CLAIM OF RIGHT THEORY.

■ The elements necessary for establishing a prescriptive easement include " 'reasonably clear and convincing' proof of open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the owner of the servient tenement, for the prescriptive period" of five years. *West v. Smith,* 95 Idaho 550, 557, 511 P.2d 1326, 1333

(1973) (citations omitted); I.C. § 5–203. The term "under a claim of right" means use without recognition of the rights of the owner of the servient estate. *West,* 95 Idaho at 557, 511 P.2d at 1333.

The only element in dispute is whether use of the road across the Hollingers' property by the Walkers and the Martin Group was adverse, or under a claim of right. The Hollingers argue that when the Walkers and the Martin Group purchased their respective lots in the Wilderness Ranch Subdivisions, they were given "permission" by the subdivision developers to use the road across the Hollingers' property as a secondary means of access. Thus, they claim use of the road was not adverse.

The district court disagreed with the Hollingers, holding that use of the road was made under a claim of right and, therefore, gave rise to a prescriptive right in favor of the Walkers and the Martin Group. In making its ruling, the district court relied on the "intended but imperfectly created servitude" theory first set forth in a tentative draft of the Restatement (Third) of Property. Under this theory, a prescriptive easement arises whenever the property owner and the user intend to create a servitude but fail to comply with a formal requirement imposed by law for creation of the servitude. "Observance of the terms of the servitude for the prescriptive period substitutes for compliance with the required formality because it provides satisfactory proof of the existence and terms of the servitude and resolves any doubts as to the parties' intent that may have been created by their failure to comply with the formality." RESTATEMENT (THIRD) OF PROPERTY § 2.17 cmt. a (Tentative Draft No. 3, 1993).

The Hollingers argue that the Restatement's theory is not the current law in Idaho, and even if it were, the facts in the record do not establish such an easement. It is not necessary to decide whether the Restatement's theory is the current law in Idaho, because the Court concludes that a prescriptive easement exists in favor of the Walkers and the Martin Group according to existing Idaho case law.

■ As previously noted, a prescriptive right cannot be acquired if permission to use the land was given by virtue of a mere revocable license. *West,* 95 Idaho at 557, 511 P.2d at 1333. However, an oral grant of a permanent right to use one's land, supported by valuable consideration, can give rise to a prescriptive right. *See Checketts v. Thompson,* 65 Idaho 715, 152 P.2d 585 (1944). In *Checketts,* a landowner orally agreed that the plaintiff, Checketts, could construct a waterhole and right of way for passage of his livestock to the waterhole on his property for consideration of $100. The defendant, who later purchased the servient estate, claimed that Checketts' use was permissive and, thus, he had not acquired a prescriptive right. *Id.* at 719–20, 152 P.2d at 586–87. The *Checketts* court disagreed, holding that because Checketts' use of the land was made pursuant to an express agreement, which was supported by consideration, his use of the land was based upon a claim of right. *Id.* at 720–21, 152 P.2d at 587. The *Checketts* court also held that once Checketts had expended money and labor in constructing the waterhole and fences around the right of way, after obtaining the grant, his rights became irrevocable. *Id.* at 721, 152 P.2d at 587. Because the evidence showed that Checketts' use had been open, continuous, and uninterrupted for the prescriptive period, and the defendant had failed to meet his burden of showing that the use was permissive, the Court ruled that a prescriptive easement existed in favor of Checketts. *Id.*

The principle applied in *Checketts* was more recently explained in *Lee v. Lozier,* 88 Wash.App. 176, 945 P.2d 214 (Wash.Ct.App. 1997). In *Lee,* the court addressed the issue of whether certain subdivision residents owned a prescriptive easement over a dock which was located on the property of a neighboring lot owner. In determining whether use of the dock was adverse, the *Lee* court noted:

> "The important question is whether the landowner permitted the use as a mere revocable license or whether an oral grant of a permanent right to use the property was intended." . . .

> . . . .

> . . . [T]he presence of consideration is helpful in determining whether the property owner intended to grant a permanent right or merely a revocable license to use the property.

*Id.* at 218 (quoting and citing *Washburn v. Esser,* 9 Wash.App. 169, 511 P.2d 1387 (Wash.Ct.App.1973)). At the time the dock was built, the owner of the servient estate, Fogleman, had orally agreed to allow the subdivision residents to use a portion of the dock. *Id.* at 216. Fogleman had promised to record a letter memorializing his agreement, but he never did. Noting that the subdivision residents had not acquired a legal right to use the dock because no easement (or letter) was ever recorded, the court concluded that Fogleman's promise to record the letter indicated an intent to grant a permanent, irrevocable right to the subdivision residents. *Id.* at 218. The court stated: "'When the owner of a servient estate confers upon another the right to use that property as if it had been legally conveyed, the resultant use is made under a claim of right, rather than by permission.'" *Id.* (quoting *Crescent Harbor Water Co. v. Lyseng,* 51 Wash.App. 337, 753 P.2d 555, 558 (Wash.Ct. App.1988)). The court also indicated that, because the subdivision residents had shared the cost of building and improving the dock, it was satisfied that the subdivision residents "were operating under a permanent right to use" the dock. *Id.* at 218–19. The court ultimately concluded that use of the dock was based upon a claim of right and that a prescriptive easement existed in favor of the subdivision residents.

■ In the present case, there is substantial evidence that the subdivision developers intended to convey a permanent right, and not a mere revocable license, to the Walkers and the Martin Group to use the road across the Hollingers' property. The subdivisions' Declaration of Covenants, Conditions and Restrictions (CC & Rs) state: "The Daggett Creek Road[, a portion of which crosses what is now the Hollingers' property,] shall be used only as a secondary or emergency means of access." Identical language is found in the notes to the subdivisions' plat map. A copy of the CC & Rs and the plat

map were given to all prospective purchasers of the lots in the subdivisions. The Walkers and the Martin Group testified that they interpreted the language in the CC & Rs and the notes to the plat as conveying a permanent right to them to use the road over the Hollingers' property as a secondary means of access to their property. Believing they had a permanent right to use the road, the Walkers and the Martin Group paid their homeowners' association dues, which, in part, were used to continuously maintain and repair the road across the Hollingers' property. Substantial improvements made to land in reliance on a right to use the land is evidence that use of the land is not merely permissive. *Sinnett v. Werelus*, 83 Idaho 514, 523, 365 P.2d 952, 957 (1961). *See Checketts*, 65 Idaho at 721, 152 P.2d at 587.

Additional evidence of an intent to grant a permanent right can be found in the testimony of Myrl Schroeder, an officer and director of the general partner in Wilderness Ranch, Ltd. (the subdivision developers). Schroeder testified that, from the start of development, the developers intended the road across the Hollingers' property to be used as an alternate means of access to the subdivision. He also testified that the developers intended that the lot owners have a right to use the road across the Hollingers' property, but admitted that the developers had never specifically given the lot owners permission to use the road.

Finally, the Hollingers have not presented any evidence to suggest that the Walkers' and the Martin Group's right to use the road was only a temporary right, revocable at any time by the subdivision developers. The evidence is clear and undisputed. A representative of the subdivision developers testified that the developers intended that the lot owners have a right to use the road across the Hollingers' property. The subdivisions' CC & Rs confirm this statement. The inclusion of the reference in the CC & Rs to use of the road is a clear indication that a permanent right was intended, not a temporary permissive right subject to revocation. The lot owners relied upon the representation that they would have the right to use the road across the Hollingers' property by pay-

ing the purchase price for their respective lots and by expending money to maintain the road.

Based on the evidence presented, this Court concludes that use of the road across the Hollingers' property was made under a claim of right and, thus, gave rise to a prescriptive right in favor of the Walkers and the Martin Group. Because use of the road was also open, notorious, continuous, and uninterrupted, and made with the knowledge of the owner of the servient estate for the prescriptive period, the Court concludes that a prescriptive easement exists in favor of the Walkers and the Martin Group and that they are entitled to summary judgment as a matter of law.

## IV.

### ATTORNEY FEES ON APPEAL

■ The Walkers claim they are entitled to an award of attorney fees on appeal pursuant to I.C. § 12–121. Attorney fees on appeal are appropriate under I.C. § 12–121 only if this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, and without foundation. *See Anson v. Les Bois Race Track, Inc.*, 130 Idaho 303, 305, 939 P.2d 1382, 1384 (1997). Where an appeal turns on questions of law, an award of attorney fees under this section is proper if the law is well settled and the appellant has made no substantial showing that the district court misapplied the law. *Andrews v. Idaho Forest Indus., Inc.*, 117 Idaho 195, 198, 786 P.2d 586, 589 (Ct.App.1990).

In the present case, the district court concluded that a prescriptive easement exists based upon the Restatement's theory of an intended but imperfectly created servitude. This theory has not been expressly adopted by this Court and is reasonably in dispute. It was not unreasonable to challenge the Restatement theory on appeal, despite this Court's determination that the undisputed facts lead to the same conclusion under established Idaho law. The Walkers are not entitled to an award of attorney fees on appeal under I.C. § 12–121.

## V.

### CONCLUSION

The district court's decision to grant summary judgment in favor of the Walkers and the Martin Group with regard to their claim for a prescriptive easement is affirmed. Costs are awarded to the Walkers and the Martin Group. No attorney fees are awarded.

SILAK and WALTERS, JJ., concur.

Justice JOHNSON, Dissenting.

I respectfully dissent from the Court's opinion. In my view, in an effort to avoid rejecting the new law announced by the trial court, the Court misapplies the existing law in this state concerning prescriptive easements.

In analyzing whether the Walkers and the Martin Group used the road across the Hollingers' property (the road) under a claim of right, the Court implied that it was the burden of the Hollingers to show that the use was permissive. This approach is erroneous because we know how the use began. Wilderness Ranch Ltd. invited those who purchased lots in Wilderness Ranch Subdivisions to use Daggett Creek Road "as a secondary or emergency means of access." Therefore, no presumption arose that the use was adverse and under a claim of right. This left the burden with the Walkers and the Martin Group to prove their use of the road under a claim of right.

In the Walker case, the trial court found that the Walkers "proved by reasonably clear and convincing evidence that they and their predecessors in interest have made open, notorious, continuous, and uninterrupted use of the road over the Hollinger property for more than the five-year statutory period . . . under a claim of right. . . ." In the Martin Group case, the trial court concluded that the Martin Group had "produced undisputed evidence that they and their predecessors in interest have made open, notorious, continuous, and uninterrupted use of the road over the Hollinger property for more than the five-year statutory period under a claim of right. . . ." In each case the trial court followed these statements with the following: "The claim of right is based on the easement or the servitude imperfectly created by Wilderness Ranch Limited Partnership." This makes it clear that in both cases the trial court relied on the theory advanced in the tentative draft of the Restatement (Third) of Property as its rationale for finding a claim of right. I am unable to accept this theory. It does not state current Idaho law, and I am not prepared to embrace it as appropriate law in our state. Our existing law concerning prescriptive easements is sufficient to resolve disputes correctly.

As the Court has recently reaffirmed, "Under claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement." *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997). The evidence in the cases involved in this appeal indicates that during the time the Walkers and the Martin Group used the road when the servient estate was owned by Wilderness Ranch Ltd., they did not use it without recognition of the rights of Wilderness Ranch Ltd. In my view, the evidence is subject to only one interpretation. Wilderness Ranch Ltd. permitted the Walkers and the Martin Group to use the road. Whether Wilderness Ranch Ltd. intended to create an easement is irrelevant in addressing the question of whether the Walkers and the Martin Group had a claim of right when they used the road.

*Checketts v. Thompson*, 65 Idaho 715, 152 P.2d 585 (1944), cited by the Court in its opinion, is not on point. In *Checketts*, there was "a verbal agreement whereby [the parties claiming the easement] were given permission to construct the waterhole in question, and to use the same together with the right-of-way for the travel of their cattle to and from the waterhole, for a consideration of $100, which the testimony shows was paid." *Id.* at 719, 152 P.2d at 586. The Court concluded:

> [The claimants] entered upon this land and the use and enjoyment of these claimed rights by express agreement for their purchase and use. This was a use based upon a claim of right and, as the evidence showed such use to have been

open, continuous, and unmolested for a period of twenty-one years, the burden was upon [the owners of the servient estate] to show that the use was permissive.

*Id.* at 720–21, 152 P.2d at 587 (citations omitted). In the present case, there was no verbal agreement and no consideration to establish a claim of right. Therefore, the burden never shifted to the Hollingers to show that the use was permissive.

In *Checketts,* the Court also ruled:

Furthermore, it is clearly apparent that [the claimants] after obtaining the grant, expended money, or its equivalent in labor, in use of these rights so granted, by constructing the waterhole and fences adjoining the right-of-way, and by maintaining the same, and under these and other circumstances in this case, these rights thus became irrevocable.

*Id.* at 721, 152 P.2d at 587. The maintenance of the road by the subdivision association to which the Walkers and the Martin Group contributed is not the same as the expenditures in *Checketts* because in the present case there was no grant of the right to use the road accomplished by an express agreement with consideration.

The Court's reliance on the testimony of the Walkers and the Martin Group that they had a permanent right to use the road is misplaced. In *Cardenas v. Kurpjuweit,* 116 Idaho 739, 742, 779 P.2d 414, 417 (1989), the Court ruled that the claimant's state of mind is not relevant in determining whether a prescriptive easement has been established.

Chief Justice TROUT concurs in dissent.