# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44498

LEMHI COUNTY, a political subdivision of the State of Idaho, by the Board of County Commissioners, Robert Cope, Richard Snyder, and John Jakovac,

       Plaintiff-Counterdefendant,

and

VERDELL OLSON; SCOTT HARTVIGSON as trustee of the ZENAS R. HARTVIGSON LIVING TRUST,

       Defendants-Counterclaimants-Cross Defendants-Appellants,

v.

PHILLIP F. MOULTON; JAMES SKINNER; PRATT CREEK RANCH LIMITED PARTNERSHIP; LYLE SKINNER as trustee of the ELLIS RAY SKINNER FAMILY LIVING TRUST,

       Cross Defendants-Cross Claimants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2017 Term

2018 Opinion No. 24

Filed: March 13, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Lemhi County. Hon. Alan C. Stephens, District Judge.

The district court's judgment is <u>affirmed in part</u>, and <u>remanded</u> for specification of drainage basin location.

Hawley, Troxell Ennis & Hawley, LLP, Pocatello, for appellants. Benjamin C. Ritchie argued.

Frederick H. Snook, Salmon, and Giles & Thompson Law, PLLC, Boise, for respondents. Chip Giles argued.

———————————

BRODY, Justice

This is a case about whether and to what extent an uphill landowner can send irrigation wastewater across a downhill landowner's property. This case began when Lemhi County filed suit against the owners of both ranches seeking to relieve flooding along one of its roads. Phillip Moulton owns and operates a ranch that is on higher ground than the adjacent ranch that Verdell Olson operates. Surface and irrigation water that begins on Moulton's ranch makes its way to the Lemhi River through various channels. The one at issue in this case is a steep draw that sends water across a county road and through the downhill ranch that Olson operates. Lemhi County reached a settlement with Olson, and the remaining issue for the district court was whether an easement or a natural servitude permitted Moulton to send water down the draw. The district court held that both an easement and natural servitude permit Moulton to send up to 3.25 cubic feet per second of water down the draw. Olson appealed. We affirm the judgment of the district court to the extent it provides for an easement and natural servitude, but remand for specification of the location of the drainage basin on Olson's property.

## I. BACKGROUND

This appeal involves agricultural property in Lemhi County, approximately ten miles southeast of Salmon, Idaho. The case began in 2011 when Lemhi County sought declaratory relief to prevent flooding on the Lemhi County Backroad ("Backroad"). The Backroad runs generally north-to-south, and divides the two ranches at issue in this case—the Moulton-Skinner Ranch (uphill property) and the Hartvigson Ranch (downhill property).

The Appellants are Scott Hartvigson as Trustee of the Zenas R. Hartvigson Living Trust, and Verdell Olson, who leases and operates the Hartvigson Ranch. The Hartvigson Ranch spans approximately 200 acres and is situated on the Lemhi Valley floor near the Lemhi River. The ranch has been in the Hartvigson family since 1896, and the Hartvigson Trust has leased the ranch to Olson consistently since 1976. Most of the Hartvigson Ranch is on the west side of the Backroad, but a small portion extends into a steep draw on the east side (the "Hartvigson Draw"). The water that flows through this draw runs under the Lemhi County Backroad through one of two culverts, across the Hartvigson Ranch, and into a drainage that feeds into the Lemhi River.

The Moulton-Skinner Ranch is on higher ground on the east side of the Backroad. It includes land the Moulton family has owned since 1971, as well as land he purchased—formerly

the Skinner Ranch—after this case was filed in the court below. The Moulton-Skinner Ranch has three drainages: (1) Pratt Creek's main channel (southernmost), (2) the low-lying basin splitting the Moulton Ranch (middle), and (3) the Warm Springs drainage (northernmost). Only the basin drainage is at issue, as neither the lower portion of Pratt Creek nor Warm Springs feeds into the Hartvigson Draw.

Historically, both the Skinner and Moulton ranches used flood irrigation. The original Moulton Ranch began converting from flood to sprinkler irrigation in the 1970s, while the Skinner Ranch converted in 1999 and 2000. The Skinner and Moulton ranches' water rights out of Pratt Creek have the same priority date and total approximately 20 cubic feet per second ("CFS"), a portion of which is used on lands where the resulting waste water flows through the Hartvigson Draw. In addition to irrigation waste water, natural spring and surface water from the basin also traveled through the draw.

Water flowing through this draw formed the basis of Lemhi County's declaratory judgment action in September 2011. The county claimed that in November 2010, Verdell Olson obstructed the flow of water from the Hartvigson Draw through the culverts, which caused flooding along that area of the Backroad. Lemhi County noted in its complaint Olson's failure to allow the water to pass unobstructed, based at least in part on his allegation that the Moulton-Skinner Ranch sent too much water down the draw, which caused damage to the Hartvigson Ranch.

On May 9, 2016, the district court entered a judgment that the Hartvigson Ranch allow drainage of natural surface water in the amount of 3.25 CFS through the culverts and across its lands, "subject to weather events or other natural conditions that may result in larger amounts." That judgment left unresolved how much water, if any, the Moulton-Skinner Ranch could legally send down the Hartvigson Draw. The court held a three-day bench trial from May 11 through May 13, 2016, at which nine witnesses testified and an additional two provided deposition testimony.

On July 14, 2016, the district court entered its findings of fact and conclusions of law. The court found that the channel through the basin, down the Hartvigson Draw, across the Hartvigson property, and eventually into the Lemhi River was a natural waterway. Additionally, the district court found that this water flow met the requirements for the Moulton-Skinner Ranch to establish a prescriptive easement. The court entered a judgment—later amended to comply

3

with I.R.C.P. 54—permitting Moulton to send water in the amount of 3.25 CFS down the basin drainage that flows through the Hartvigson Draw under both an easement and natural servitude theory. The Appellants timely appealed.

## II.  STANDARD OF REVIEW

This Court's review of a lower court's decision is limited to determining whether the evidence supports the court's factual findings, and whether those finding suppose its legal conclusions. *Akers v. Mortenson*, 147 Idaho 39, 43, 205 P.3d 1175, 1179 (2009) (citing *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006)). "It is the province of the trier of fact to weigh conflicting evidence and testimony and to judge the credibility of witnesses." *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990); I.R.C.P. 52(a). This Court will not overturn on appeal findings of fact based on substantial evidence, even if conflicting. *Hunter v. Shields*, 131 Idaho 148, 151, 953 P.2d 588, 591 (1998) (citing *Highlands, Inc. v. Hosac*, 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997)). Accordingly, "the trial court's finding of fact will be liberally construed in favor of the judgment entered." *Sun Valley Shamrock*, 118 Idaho at 118, 794 P.2d at 1391. We exercise free review over conclusions of law in light of the facts found, however. *Brown v. Greenheart*, 157 Idaho 156, 161, 335 P.3d 1, 6 (2014).

## III. ANALYSIS

### A.  The district court did not err in determining an easement for 3.25 CFS of water existed through the Hartvigson Draw.

The district court determined that Respondents presented clear and convincing evidence at trial that the water flow through the basin, down the Hartvigson Draw, and across the Hartvigson property satisfied all the required elements of a prescriptive easement. Appellants claim that the court erred in its prescriptive easement determination on two fronts: (1) the Moulton-Skinner Ranch's water use was not adverse to Appellants, and (2) Respondents failed to prove the scope of the easement.

#### 1.  The district court did not err in determining the water usage was adverse.

A claimant seeking to establish a prescriptive easement must prove by clear and convincing evidence that the use of the subject property is "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period." *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006) (citing *Hodgins v. Sales*, 139 Idaho 225,

229, 76 P.3d 969, 973 (2003)). The trial court must make findings relevant to establish each element of the claim for this Court to sustain the judgment. *Hodgins*, 139 Idaho 229, 76 P.3d at 973. "Under a claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement." *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997) (citing *Cox v. Cox*, 84 Idaho 513, 521–22, 373 P.2d 929, 934 (1962)).

The district court made the following legal conclusion regarding the establishment of a prescriptive easement:

> Clear and convincing evidence was presented at trial, and is contained in the findings above, that the water's travel through the basin watercourse, across the Hartvigson draw, and onto the Hartvigson property, was open, notorious, continuous, uninterrupted, under the Skinner and Moulton's claim of right and with the knowledge of the Hartvigsons and Olson for a period of well over 20 years.

The lower court's factual findings—including the installation of culverts, the man-made ditch across the Hartvigson Ranch, and ample testimony at trial—satisfies both the knowledge and "open and notorious" requirements. Additionally, the district court cited evidence sufficient to establish this water flow satisfied the twenty-year statutory period required by Idaho Code section 5-203, and in fact went back a century or more. The water use also met the "continuous and uninterrupted" requirement. Naturally, there will be periods where water dries up, as well as weather events that will increase water flow in a particular area. However, continuous use does not require consistent daily or even monthly use, merely consistent use typical for the type of easement claimed. *See, e.g.*, *Beckstead v. Price*, 146 Idaho 57, 62, 190 P.3d 876, 881 (2008) (holding that even annual open use of a road was sufficient to satisfy the statutory period). The district court found that when Skinner was operating his ranch, he would send water down the Hartvigson Draw as part of his irrigation practices and in response to events that increased the water in the basin. This finding supports the district court's determination that the use in this case was continuous.

The only remaining factor in determining the existence of a prescriptive easement in this case is whether the practices of the Moulton-Skinner Ranch existed under a claim of right, adverse to Appellants. The Hartvigson Ranch has both a spring water and wastewater right for 0.4 CFS (each) of water out of the Hartvigson Draw. "Wastewater" as described in this dispute is simply the excess water that flows off irrigated land. Eunice Hartvigson filed for the wastewater

right out of Hartvigson Draw in approximately 1970, claiming that the Hartvigson Ranch had used wastewater coming off the Moulton-Skinner Ranch since 1896.

Appellants contend that the existence of the wastewater right does not bear on the "adverse" analysis—but that if it does, it demonstrates that the Moulton-Skinner water practices were permissive, not under claim of right. Respondents counter that the wastewater right Eunice Hartvigson filed for demonstrates that water had flowed in that area for over a century, and witness testimony supports the fact that Moulton and his predecessors at the Moulton-Skinner Ranch have been sending water down the draw for decades.

"The general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under a claim of right." *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973). The burden then shifts to the servient tenement to demonstrate "that the use was permissive, or by virtue of a license, contract, or agreement." *Id.* Passive acquiescence or inaction on the part of the servient tenement is insufficient to prove permission. *Id.* The Moulton-Skinner practice of sending water down the Hartvigson Draw was under a claim of right and adverse to the Hartvigson Ranch. Whether or not Eunice Hartvigson filed for the wastewater right, the district court's factual findings establish that the uphill landowners were sending water down the draw for decades, both before and after the water right. The wastewater right only bolsters Respondents' contention that they have been sending water down the draw for as long as they can recall—at least since the 1950's—and likely for decades before. This was under a claim of right and adverse to Appellants.

**2. The district court did not err in determining the scope of the easement.**

Appellants argue that even if the district court correctly determined a prescriptive easement existed, it erred in holding that the scope of the easement was 3.25 CFS of water. Respondents contend that there was sufficient evidence produced at trial to prove that 3.25 CFS traveled through the Hartvigson Draw, and that the drainage system from the draw to the Lemhi River would handle that amount.

The district court determined that clear and convincing evidence was presented at trial to support the scope of the easement, and included the following relevant findings of fact:

> Between the Moulton Ranch and Skinner Ranch, the water right out of Pratt Creek is almost 20 CFS. The two usually shared approximately 6 CFS for irrigation out of Pratt Creek on the lands that are relevant to this matter.

6

. . . .

Historically both the Moulton and Skinner ranches were flood irrigated.

. . . .

When this case began, both Moulton and Skinner owned property that sent irrigation wastewater down the Hartvigson draw.

. . . .

Historically the Skinner ranch would send about half the irrigation water, approximately 3CFS, down the natural draw, and the other half into the north ditch at the upper Y.

. . . .

Obviously prior to construction of the man-made ditch, all the water immediately above the upper Y continued to flow down the natural draw and onto the Hartvigson property.

. . . .

Historically, Skinner has seen up to 6 CFS running through the Hartvigson draw even when no water is being diverted from Pratt Creek by Moulton or Skinner for irrigation.

There has been higher than normal snowpack in Lemhi County from 2008 through 2016.

There have been events which sent larger amounts of water down the Hartvigson draw. The majority of these events occurred outside irrigation season, and were caused by weather events such as excessive snowmelt runoff, heavy rains, or a "rain on snow" event. These weather events were outside Moulton and Skinner's control.

One event on May 6, 2016 was due to a rise in Pratt Creek the night before which shut down pivot systems on the Moulton Creek ranch, and blew out a canvas dam. Moulton fixed the dam early in the morning on May 6, 2016. The result was higher than usual water being sent through the Hartvigson draw and to the Hartvigson ranch. This event did not damage the Hartvigson ranch. This discharge was reasonable, and far less wastewater than what was historically sent to the Hartvigson ranch during the many decades of flood irrigation.

. . . .

Both the North and South Culverts will handle at least 3.25 CFS of water flow.

Before Moulton and Skinner converted from flood irrigation to sprinklers, 3.0 CFS to 3.5 CFS of waste water was sent down the Hartvigson draw and through the South Culvert, unless diverted by Olson to the North Culvert.

Appellants claim that no witness at trial could testify as to the exact amount of water that had regularly been sent down the Hartvigson Draw. They contend that, absent testimony with specificity as to the amount—either a measurement or observation—the district court lacked

7

clear and convincing evidence to support an easement for 3.25 CFS. However, the district court had testimony in this case supporting a finding of 3.25 CFS. For example, Jim Skinner testified on direct as follows:

> **Q**: And I understand it would vary, but what quantities of wastewater would you possibly send down the draw?
>
> **A**: After we had used this water from three to five times, it was—there was water, yes, but not a lot.
>
> **Q**: Can you give the court an approximate quantity.
>
> **A**: At the most, probably [] 3 to 3.5 CFS.

Other testimony established varying amounts of water coming down the draw at different times of the year, anywhere from no water—as was the case during the trial in late spring when the parties visited the area—to 7 CFS even when no irrigation wastewater was being diverted. Events like rainfall, excessive snow runoff, or overloaded sprinklers could certainly affect how much water the Moulton-Skinner Ranch sends down the Hartvigson Draw. The testimony provided during the trial provided sufficient evidence for the district court to determine the scope of the Moulton-Skinner Ranch's easement was 3.25 CFS.

**B. The district court did not err in determining a natural watercourse existed from the Pratt Creek diversion, through the basin, and down the Hartvigson Draw, and thus a natural servitude exists for waters that drain through this watercourse.**

The district court also determined that the doctrine of natural servitude permitted the Moulton-Skinner Ranch to discharge waters into a natural watercourse that begins at the Pratt Creek diversion and flows down the Hartvigson Draw. Appellants claim that the court conflated the doctrines of easement and natural servitude. They contend that the Hartvigson Draw is not the natural drainage for Pratt Creek, so a natural servitude cannot exist through the basin (middle) drainage for water originating in Pratt Creek. Additionally, they claim that the natural servitude doctrine is limited to naturally occurring surface water, and does not include irrigation water, wastewater, or other accumulated diverted water. Respondents contend that substantial evidence was presented at trial that the water flow from the Pratt Creek diversion through the Hartvigson Draw is a natural watercourse, and that—in addition to naturally occurring surface water—a natural servitude can include irrigation runoff and wastewater.

This Court has defined a natural watercourse as follows:

> [A] water course is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water.

8

> The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water.

*Loosli v. Heseman*, 66 Idaho 469, 481, 162 P.2d 393, 398 (1945) (quoting *Hutchinson v. Watson Slough Ditch Co.*, 16 Idaho 484, 488, 101 P. 1059, 1061 (1909)).

Idaho "adheres to the civil law rule . . . which recognizes a natural servitude of natural drainage between adjoining lands so that the lower owner must accept the 'surface' water which naturally drains onto his land." *Dayley v. City of Burley*, 96 Idaho 101, 103, 524 P.2d 1073, 1075 (1974) (citation omitted). An upper landowner can accumulate water and release it back into its natural watercourse. *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 305, 805 P.2d 1223, 1229 (1991). However, the upper landowner cannot accumulate and release water in unnatural concentrations in such a manner as to increase the damage on the lower landowner. *Id.*; *Teeter v. Nampa & Meridian Irrigation Dist.*, 19 Idaho 355, 359, 114 P. 8, 9 (1911).

Sufficient evidence was presented at trial that the drainage at issue is a natural watercourse. A map produced at the conclusion of a complaint dating back more than a century—admitted during this trial—depicted the basin drainage as a natural watercourse. Additionally, the district court noted "testimony from multiple witnesses including Skinner, Moulton and the Olson/Hartvigson expert witness himself support the conclusion" that the drainage at issue met all the requirements of a natural watercourse defined in *Hutchinson* and its progeny. Further, the court found no evidence that the Moulton-Skinner Ranch's irrigation practices—as encompassed in a free-flowing irrigation system without the capability for substantial storage—accumulated and dispersed water unnaturally so as to cause damage to the Hartvigson Ranch. However, the district court's limitation of the natural servitude to 3.25 CFS, the amount the district court established as reasonable given the history of the land at issue, would prevent unreasonable accumulation and release in any event. This Court thus holds that the district court did not err in determining that the basin drainage at issue was a natural watercourse into which the Moulton-Skinner Ranch could deposit water.

## C. The district court's judgment is not sufficiently clear as to the basin drainage location.

Respondents contend that the judgment as written is sufficiently clear to fix the parties' rights as to both the location and amount of the easement. Appellants claim the judgment is vague in several aspects, including phrasing of certain terms, whether the amounts are aggregated, and the at-issue drainage's specific location.

The district court's amended judgment in this case is not sufficiently clear with respect to the location of the basin drainage, but satisfactory as to the other aspects. According to the district court's judgment, under either an easement or natural servitude, the Moulton-Skinner Ranch can send up to 3.25 CFS down the basin drainage that goes through the Hartvigson Draw. The judgment fails to define the particularity of the basin drainage, however. As this Court has stated:

> A judgment which affects the title or interest in real property must describe the lands specifically and with such certainty that the court's mandate in connection therewith may be executed, and such that rights and liabilities are clearly fixed and that all parties affected thereby may readily understand and comply with the requirements thereof.

*Kosanke v. Kopp*, 74 Idaho 302, 307, 261 P.2d 815, 818 (1953). While it may be true that "[e]veryone involved in this case could walk [] right to the natural watercourse," as Respondents claim, a judgment affecting a property interest must provide more. As we stated in *Kosanke*, the judgment must identify "with precision and particularity the origin, courses, distances and destination" of the basin drainage at issue in this case. *Id.*

**D. Respondents are not entitled to attorney's fees.**

Idaho Code section 12-121 permits this Court to "award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." This appeal was not frivolous or lacking foundation, so we do not award fees in this case.

## IV. CONCLUSION

For the foregoing reasons, we remand this case to the district court to modify the judgment in accordance with this decision. The court may take additional testimony as necessary. Costs to Respondents.

Chief Justice BURDICK, and Justices JONES, HORTON and BEVAN CONCUR.

10